Argued and submitted November 7, 1996, decision of the Court of Appeals reversed, order of the Psychiatric Security Review Board vacated, and case remanded to the Board for reconsideration March 27, 1997

ADRIAN CORLEY MENZL,
*Petitioner on Review,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent on Review.*

(PSRB 93-1252; CA A82089; SC S42812)

934 P2d 431

Harris S. Matarazzo, Portland, argued the cause and filed the petition for petitioner on review.

Katharine H. Waldo, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

GRABER, J.

**GRABER, J.**

A trial court placed petitioner under the jurisdiction of the Psychiatric Security Review Board (PSRB) after finding him guilty except for insanity of multiple criminal charges. Following a hearing in 1993, the PSRB found that petitioner was affected by a mental disease or defect, because he suffered from polysubstance abuse, and that he presented a substantial danger to others. The PSRB therefore retained jurisdiction over him. The Court of Appeals affirmed the PSRB's order without a written opinion. *Menzl v. PSRB*, 134 Or App 217, 893 P2d 580 (1995). We reverse the Court of Appeals' decision, vacate the PSRB's order, and remand the case to the PSRB for reconsideration.

On March 4, 1993, petitioner fired more than 30 shots from his .22-caliber rifle at a friend's trailer home and two parked vehicles. The trailer home was occupied when he fired some of the shots. After police arrested petitioner, he told them that he was an intravenous drug user and showed them needle marks on both arms. He behaved strangely during the police interview. While in jail, petitioner committed several violent acts.

On April 21, 1993, after a trial on stipulated facts, petitioner was adjudged guilty except for insanity of attempted assault I with a firearm, unlawful use of a weapon with firearm, and two counts of recklessly endangering another person, as a result of the shooting incident. In addition, petitioner was found guilty except for insanity of criminal mischief I, based on a violent incident at the jail. Finding that petitioner was affected by a mental disease or defect and that he presented a substantial danger to others, the trial court placed him under the PSRB's jurisdiction for a period not to exceed 10 years, and petitioner was sent to Oregon State Hospital (OSH).

After petitioner's arrival at OSH, the staff, relying on the *Diagnostic and Statistical Manual of Mental Disorders* (3d ed rev 1987) (DSM-III-R), ruled out an initial, provisional Axis I diagnosis of bipolar disorder and affirmed an

Axis I diagnosis of polysubstance abuse.[1] Dr. Russell, petitioner's treating physician since May 1993, consistently diagnosed petitioner as suffering from polysubstance abuse on Axis I. Dr. Russell noted no Axis II diagnosis and an Axis III diagnosis of legal blindness in petitioner's right eye, as a result of an old injury.[2]

The record indicates that petitioner, who was 20 years old at the time of the shooting incident, has used drugs and alcohol for many years. He told OSH staff that he has used marijuana since the age of 11, cocaine since age 16, and methamphetamine since age 19. He also has consumed alcohol heavily since age 17 and sporadically has used other drugs, including heroin and LSD. Petitioner has experienced delusions, hallucinations, depression, and suicidal thoughts as a result of his drug use.

---

[1] The DSM is a publication of the American Psychiatric Association that categorizes mental disorders and identifies the diagnostic criteria for each. The DSM-III-R, published in 1987, is a revised edition of the DSM-III, published in 1980. The DSM uses a multiaxial evaluation system for classifying disorders, and each axis conveys a different class of information. DSM-III at 23. Axis I consists of clinical syndromes and V Codes. V Codes are conditions not attributable to a mental disorder that are a focus of attention or treatment. Axis II consists of developmental disorders and personality disorders. All mental disorders fall within those two axes and are addressed in the DSM. *Ibid.* Axis III is for physical disorders and conditions. Axis IV, Severity of Psychosocial Stressors, and Axis V, Highest Level of Adaptive Functioning Past Year, provide information supplementing the official DSM diagnoses (Axes I, II, and III). *Id.* at 8.

[2] One professional who evaluated petitioner in September 1993 diagnosed him as suffering from "psychoactive substance abuse not otherwise specified." The DSM-III-R explains the difference between *psychoactive* substance use disorders and *polysubstance* use disorders:

"Psychoactive Substance Abuse and Dependence often involve several substances, either simultaneously or sequentially. * * *

"When a person's condition meets the criteria for more than one Psychoactive Substance Use Disorder, multiple diagnoses should be made. The Polysubstance Dependence diagnosis is reserved for noting a period of at least six months during which the person was repeatedly using at least three categories of psychoactive substances * * *, but no single psychoactive substance predominated. Further, during this period the dependence criteria were met for psychoactive substances (as a group), but not for any specific substance." DSM-III-R at 170.

The DSM-III-R also distinguishes between psychoactive substance *dependence* and *abuse*. DSM-III-R at 166-69. The manual states that psychoactive substance abuse is a "residual category for noting maladaptive patterns of psychoactive substance use that have never met the criteria for dependence for that particular class of substance." *Id.* at 169.

Pursuant to ORS 161.341(7)(a), the PSRB held an initial hearing for petitioner on July 19, 1993.[3] The burden of proving that petitioner should remain under the PSRB's jurisdiction was on the state. At that hearing, Dr. Russell and a psychiatric social worker both testified that petitioner suffered from polysubstance abuse but that, nonetheless, he did not have a "mental disease or defect." The PSRB continued the hearing so that a full comprehensive psychological evaluation could be performed before it rendered a decision.

The PSRB resumed the hearing on October 25, 1993. In the meantime, OSH also had requested that the PSRB conditionally release petitioner, pursuant to ORS 161.341(2).[4] Dr. Russell again testified that petitioner suffered from polysubstance abuse but that, nonetheless, he did not have a "mental disease or defect." Petitioner did not testify at either hearing.

The PSRB retained jurisdiction over petitioner. In its order, the PSRB found that petitioner "is affected by a mental disease or defect as demonstrated by the underlying facts shown by the evidence including the expert testimony of Frank Russell, M.D., at the hearing to the effect that [petitioner] suffers from polysubstance abuse, an Axis I diagnosis." The PSRB further found that petitioner's mental disease or defect is in a state of partial remission, but that it requires supervision because, "with reasonable medical probability, it occasionally would become active, and when active it would

---

[3] ORS 161.341(7)(a) provides:

"In no case shall any person committed by the court under ORS 161.327 to a state hospital designated by the Mental Health and Developmental Disability Services Division be held in the hospital for more than 90 days from the date of the court's commitment order without an initial hearing before the board to determine whether the person should be conditionally released or discharged."

[4] ORS 161.341(2) provides, in part:

"If at any time after the commitment of a person to a state hospital designated by the Mental Health and Developmental Disability Services Division under this section, the superintendent of the hospital is of the opinion that the person is no longer affected by mental disease or defect, or, if so affected, no longer presents a substantial danger to others or that the person continues to be affected by mental disease or defect and continues to be a danger to others, but that the person can be controlled with proper care, medication, supervision and treatment if conditionally released, the superintendent shall apply to the board for an order of discharge or conditional release."

render [petitioner] a substantial danger to others." In addition, the PSRB found that petitioner was a proper subject for conditional release, but that the supervision and treatment necessary for his release were not presently available. Therefore, the PSRB ordered that petitioner's confinement be continued "pending the availability of supervision and treatment necessary for his conditional release."

The Court of Appeals affirmed the PSRB's order. We allowed petitioner's petition for review.

Petitioner argues that the PSRB may not retain jurisdiction over him, because he is not affected by a mental disease or defect. The legislature has not defined the term "mental disease or defect" directly, but it has excluded certain things from the definition. ORS 161.295(2) provides, in part:

"[T]he terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

*See also* ORS 161.295(1) (describing conditions for verdict of "guilty except for insanity"). The PSRB has adopted rules that also exclude from the definition of "mental disease or defect" any "abnormality manifested solely by repeated or [*sic*] criminal or otherwise antisocial conduct" or "any abnormality constituting solely a personality disorder." OAR 859-10-005(4) (1987).[5]

---

[5] Before a 1995 amendment, the rules defined the terms "mental disease" and "mental defect" as follows:

"(5) 'Mental Disease'. Mental disease is defined as any diagnosis of mental disorder which is a significant behavorial [*sic*] or psychological syndrome or pattern that is associated with distress or disability casuing [*sic*] symptoms or impairment in at least one important area of an individual's functioning and is defined in the current Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association.

"(6) 'Mental Defect'. Mental defect is defined as mental retardation, brain damage or other biological dysfunction that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the current Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association." OAR 859-10-005 (1987).

The PSRB amended OAR 859-10-005(5) and (6) in 1995 to refer to the DSM-IV and renumbered those provisions as OAR 859-10-005(4) and (5).

Petitioner asserts that polysubstance abuse is not a mental disease or defect, because polysubstance abuse is "solely a personality disorder" or because it is "manifested only by repeated criminal * * * conduct," ORS 161.295(2). In addition, petitioner argues that the record does not contain substantial evidence from which the PSRB could reasonably conclude that he is affected by a mental disease or defect.

In *Osborn v. PSRB*, 325 Or 135, 147, 934 P2d 391 (1997), this court held that the "current" DSM, which is incorporated by reference in OAR 850-10-005(5) and (6) (1987), means the DSM-III. Based on that holding, the DSM-III is the applicable edition of the DSM in petitioner's case. However, Dr. Russell and the other professionals who examined petitioner relied on the DSM-III-R in diagnosing him.

The DSM-III and the DSM-III-R differ substantially in the area of "substance use disorders." For example, petitioner was diagnosed as suffering from "polysubstance abuse" and "polysubstance dependence" under the DSM-III-R. Neither of those disorders is listed in the DSM-III. *See* DSM-III-R at 419 (comparative listing of disorders in DSM-III and DSM-III-R); DSM-III at 166 (discussing use of multiple substances). In addition, one clinician diagnosed petitioner as suffering from "psychoactive substance abuse not otherwise specified" under the DSM-III-R. *See* DSM-III-R at 185 (explaining disorder). Although that diagnosis has a rough analogue in the DSM-III, the description of the condition differs markedly in the two versions of the DSM. *See* DSM-III-R at 419 (comparative listing of disorders in DSM-III and DSM-III-R); DSM-III at 179 (discussing "Other, Mixed, or Unspecified Substance Abuse"). Because we cannot determine what petitioner's diagnosis might be under DSM-III (if any) and what findings the PSRB might have made had it applied the proper version of the DSM, we remand the case to the PSRB for reconsideration.

The decision of the Court of Appeals is reversed. The order of the Psychiatric Security Review Board is vacated, and the case is remanded to the Board for reconsideration.