Argued and submitted November 5, 1996, decision of the Court of Appeals reversed, order of the Psychiatric Security Review Board vacated, and case remanded to the Board for reconsideration March 27, 1997

## REYNALDO RIOS,
*Petitioner on Review,*

*v.*

## PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent on Review.*

## (PSRB 84-672; CA A82088; SC S42974)

934 P2d 399

Harris S. Matarazzo, Portland, argued the cause and filed the petition for petitioner on review.

Katharine H. Waldo, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

GRABER, J.

## GRABER, J.

The Psychiatric Security Review Board (PSRB) has had jurisdiction over petitioner since August 1984. Following a hearing in October 1993, the PSRB concluded that petitioner is affected by a mental disease or defect and presents a substantial danger to others. The PSRB therefore denied petitioner's requests for discharge or conditional release and ordered that he remain under the PSRB's jurisdiction. The Court of Appeals affirmed that order. *Rios v. PSRB*, 135 Or App 265, 898 P2d 799 (1995). We reverse the decision of the Court of Appeals, vacate the PSRB's order, and remand the case to the PSRB for reconsideration.

The incident that gave rise to petitioner's confinement involved his sexual assault on a six-year-old girl on April 28, 1984. Following a bench trial in late July, the trial court entered an order on August 3, 1984, finding petitioner guilty except for insanity of rape in the first degree, sodomy in the first degree, two counts of burglary in the first degree, kidnapping in the second degree, and criminal mischief in the first degree. The court found that petitioner had a mental disease or defect, that he presented a substantial danger to others, and that "at the time of the crime he was suffering from a mental disease or defect excluding criminal responsibility, to-wit: atypical psychosis." The court placed petitioner under the PSRB's jurisdiction for a period not to exceed 55 years, and petitioner was sent to Oregon State Hospital (OSH).

The record is unclear as to the basis for the trial court's finding that petitioner suffered from atypical psychosis. A medical doctor who evaluated petitioner the week before his trial began concluded that petitioner suffered from pedophilia, alcohol abuse (episodic), and mixed substance abuse (episodic), on Axis I; and antisocial personality disorder, on Axis II. The doctor noted no Axis III diagnosis.[1] The

---

[1] The *Diagnostic and Statistical Manual of Mental Disorders* (3d ed 1980) (DSM-III) is a publication of the American Psychiatric Association that categorizes mental disorders and identifies the diagnostic criteria for each. The DSM-III uses five axes for classifying disorders. DSM-III at 23. Axis I consists of clinical syndromes and V Codes. V Codes are conditions not attributable to a mental disorder that are a focus of attention or treatment. Axis II consists of developmental

diagnosis has remained virtually the same throughout petitioner's confinement.

Pursuant to ORS 161.341(4),[2] the PSRB held a hearing on October 4, 1993, to consider petitioner's request for discharge or conditional release.[3] The burden of proof was on petitioner. ORS 161.341(5).[4] Shortly before the hearing, on September 9, 1993, Dr. Meyer, petitioner's treating physician since 1992, diagnosed petitioner as suffering from pedophilia, history of alcohol abuse, history of alcohol dependence, and polysubstance abuse, on Axis I; and personality disorder, with antisocial and paranoid features, on Axis II. Meyer noted no Axis III diagnosis.

Petitioner and Meyer were the only witnesses at the hearing. Meyer confirmed his September diagnosis but noted

---

disorders and personality disorders. All mental disorders fall within those two axes and are addressed in the DSM. *Ibid.* Axis III is for physical disorders and conditions. Axis IV, Severity of Psychosocial Stressors, and Axis V, Highest Level of Adaptive Functioning Past Year, provide information supplementing the official DSM-III diagnoses (Axes I, II, and III) that may be useful for treatment planning. *Id.* at 8.

[2] ORS 161.341(4) provides:

"Any person who has been committed to a state hospital designated by the Mental Health and Developmental Disability Services Division for custody, care and treatment or another person acting on the person's behalf may apply to the board for an order of discharge or conditional release upon the grounds:

"(a) That the person is no longer affected by mental disease or defect;

"(b) If so affected, that the person no longer presents a substantial danger to others; or

"(c) That the person continues to be affected by a mental disease or defect and would continue to be a danger to others without treatment, but that the person can be adequately controlled and given proper care and treatment if placed on conditional release."

[3] Before the October 1993 hearing, petitioner had received 10 hearings before the PSRB. Following each hearing, the PSRB denied petitioner's requests for discharge or conditional release. Petitioner sought judicial review of three of the PSRB's orders, and the Court of Appeals affirmed each of those orders without a written opinion. *Rios v. PSRB*, 115 Or App 433, 838 P2d 1118 (1992), *rev den* 317 Or 163 (1993); *Rios v. PSRB*, 94 Or App 565, 767 P2d 119 (1988), *rev den* 307 Or 514 (1989); *Rios v. PSRB*, 75 Or App 579, 707 P2d 643 (1985).

[4] ORS 161.341(5) provides that "[t]he applicant must prove by a preponderance of the evidence the applicant's fitness for discharge or condition release" unless it has been more than two years since the previous hearing, in which case the state has the burden of proof. In this case, it had been less than two years since petitioner's previous hearing.

that petitioner's personality disorder was "his primary problem." He did not believe that petitioner suffered from atypical psychosis. Meyer testified that petitioner seldom participated in treatment programs, often disobeyed hospital rules, refused to take his medications, and engaged in sexually inappropriate conduct toward other patients and staff. Petitioner testified that he had sexually molested his victim but denied having raped her, despite the evidence to the contrary.

In a written order, the PSRB found as fact that:

"2.    [Petitioner] is affected by a mental disease or defect as demonstrated by the underlying facts shown by the evidence including the expert testimony of John Meyer, M.D., at the hearing to the effect that [petitioner] suffers from a diagnosis of pedophilia; history of alcohol abuse; history of alcohol dependence; and polysubstance abuse as well as a personality disorder with antisocial and paranoid features. This finding is further supported by the information contained in [particular exhibits].

"3.    [Petitioner], without adequate supervision and treatment, would continue to present a substantial danger to others as demonstrated by the underlying facts shown by the evidence including the expert testimony of John Meyer, M.D. at the hearing as well as the circumstances surrounding the crimes for which [petitioner] was placed under the jurisdiction of the Psychiatric Security Review Board as contained in [particular exhibits]."

The PSRB concluded as a matter of law that:

"1.    [Petitioner], being affected by a mental disease or defect and presenting a substantial danger to others, is under the jurisdiction of the Psychiatric Security Review Board.

"2.    [Petitioner] is not a proper subject for conditional release because he could not be adequately controlled and treated in the community and therefore it would not be in the best interest of justice and the protection of society to release him at this time."

Retaining jurisdiction over petitioner, the PSRB denied his requests to be discharged or released conditionally.

Petitioner sought judicial review of the PSRB's order, and the Court of Appeals affirmed. We allowed petitioner's petition for review.

Petitioner raises three arguments. First, he argues that pedophilia does not constitute a mental disease or defect within the meaning of ORS 161.295(2) and that the PSRB, therefore, does not have jurisdiction over him. Second, he asserts that the PSRB erred as a matter of law in continuing its jurisdiction over him, because he no longer suffers from the same condition for which he was placed under the PSRB's jurisdiction initially. Third, he argues that the record does not contain substantial evidence to support the PSRB's finding that he suffers from a mental disease or defect.

ORS 161.295(2) provides, in part:

"[T]he terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

*See also* ORS 161.295(1) (describing conditions for verdict of "guilty except for insanity"). The legislature has not otherwise defined the term "mental disease or defect" directly. The PSRB's rules similarly exclude from the definition of "mental disease or defect" those abnormalities manifested solely by repeated criminal or antisocial conduct or those constituting solely personality disorders. OAR 859-10-005(4)(a) (1987).

In *Osborn v. PSRB*, 325 Or 135, 149-50, 934 P2d 391 (1997), this court held that "pedophilia is a mental disease or defect within the meaning of ORS 161.295(2) and OAR 859-10-005(4)(a) (1987), not excluded on the basis that it is 'manifested only by repeated criminal or otherwise antisocial conduct.' " Based on that holding, we conclude that petitioner's first argument is not well taken.[5]

---

[5] In his brief to this court, petitioner also suggested in passing that substance abuse does not constitute a mental disease or defect within the meaning of ORS 161.295(2). Because of our holding that pedophilia constitutes a mental disease or defect and because petitioner has been diagnosed as having pedophilia, we need not and do not address the question whether substance abuse constitutes a mental disease or defect.

■ As to petitioner's second argument, we conclude that the PSRB did not err as a matter of law in continuing its jurisdiction over petitioner. As noted, petitioner's initial diagnosis according to the trial court's order was atypical psychosis. His diagnosis at the time of the PSRB hearing was different. In *Osborn*, 325 Or at 143, this court held that "the PSRB may continue jurisdiction over a person who is affected by a mental disease or defect, even if the diagnosis at the time of the PSRB hearing differs from the initial diagnosis." Applying that holding to the present case, we conclude that, although petitioner's diagnosis at the time of the hearing differed from his initial diagnosis, the PSRB may continue its jurisdiction over petitioner if he still is affected by a mental disease or defect.

Petitioner's final argument is that the record does not contain substantial evidence to support the PSRB's finding that he suffers from a mental disease or defect. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

Because we have concluded that pedophilia is a mental disease or defect, the question is whether the record supports a finding that petitioner suffers from pedophilia. The record consists of petitioner's and Meyer's testimony during petitioner's PSRB hearing, plus 110 exhibits, including case summaries, progress note updates, and other reports by OSH staff.

■ Meyer did not state in either his September 1993 progress note or his testimony before the PSRB which edition of the DSM he considered in diagnosing petitioner. The PSRB likewise gave no such indication. However, it appears that both Meyer and the PSRB relied on the DSM-III-R, because a PSRB order issued January 22, 1993, following petitioner's previous hearing, expressly noted that Meyer's diagnosis was based on DSM-III-R. This court held in *Osborn*, 325 Or at 147, that the "current" DSM, which is incorporated by reference in the definitions of "mental disease" and "mental defect" in OAR 859-10-005(5) and (6) (1987), means the DSM-III. Because the DSM-III is the edition that should have been applied and because its use might have made a difference, we

remand the case to the PSRB for reconsideration to determine whether petitioner meets the diagnostic criteria for pedophilia that are set forth in the DSM-III.

The decision of the Court of Appeals is reversed. The order of the Psychiatric Security Review Board is vacated, and the case is remanded to the Board for reconsideration.