Argued and submitted January 5, decision of Court of Appeals reversed; order of
Psychiatric Security Review Board vacated, and case remanded to board for
further proceedings April 14, 2005

## RODERICK DOLAN THARP,
*Petitioner on Review,*

*v.*

## PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent on Review.*

(PSRB 99-1640; CA A115750; SC S51046)

110 P3d 103

Harris S. Matarazzo, Portland, argued the cause and filed the brief for petitioner on review.

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

This case requires us to determine whether, for purposes of ORS 161.295, substance dependency is a "mental disease or defect," or, instead, is a "personality disorder." Petitioner, who had been placed under the jurisdiction of the Psychiatric Security Review Board (board) and committed to the state hospital, requested discharge on the ground that he no longer was affected by a mental disease or defect. The board denied his request, concluding that petitioner was affected by a mental disease or defect that, when active, rendered him a substantial danger to others. Based on that conclusion, the board ordered that petitioner remain under the board's jurisdiction. The Court of Appeals affirmed. *Tharp v. PSRB*, 188 Or App 763, 72 P3d 1011 (2003). We allowed review and now reverse.

We review the background of this case and the proceedings below in some detail because that discussion helps frame the specific legal question we decide. Petitioner's confinement stems from his indictment for a 1999 robbery. Two mental health experts diagnosed petitioner as suffering from paranoid thought disorder and schizophrenia at the time that he had engaged in the criminal conduct. Pursuant to a stipulated judgment, the trial court found petitioner guilty except for insanity, based on mental disease or defect. *See* ORS 161.295(1) ("A person is guilty except for insanity if, as a result of a mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."). The trial court also determined that, but for the judgment of guilty except for insanity, petitioner would have been convicted of robbery and that petitioner presented a substantial danger to others requiring commitment to a state mental hospital. *See* ORS 161.325 and ORS 161.327 (describing procedures and standards for trial court to determine whether person judged guilty except for insanity should be committed to state hospital and placed under board's jurisdiction). The trial court ordered petitioner placed under the board's jurisdiction for a maximum of 20 years. ORS 161.327(1).

ORS 161.341(4) authorizes a person placed under the board's jurisdiction and committed to a state hospital, as petitioner was, to apply to the board for discharge on the ground that "the person is no longer affected by mental disease or defect."[1] ORS 161.346 establishes the procedures for a hearing on an application for discharge, and ORS 161.351 provides, in part, that, if the board finds that the person is no longer affected by mental disease or defect, then the person shall be discharged.

In 2001, petitioner requested discharge pursuant to ORS 161.341(4), arguing that he no longer was affected by a mental disease or defect. At petitioner's release hearing, the parties introduced exhibits from petitioner's 1999 criminal case, including evaluations from that case by Dr. Cooley (on behalf of petitioner) and Dr. Colistro (on behalf of the state). Those evaluations described petitioner, at the time that he engaged in the criminal conduct and at the time of the hearing in his criminal case, as suffering from paranoid thought disorder, schizophrenia, and substance dependency.

The parties also introduced evidence regarding petitioner's conduct at the state hospital following his commitment and his mental condition at the time of the release hearing, including hospital tests and evaluations, information regarding petitioner's participation in drug and alcohol programs at the hospital, and the testimony of two experts, Dr. Ruiz-Martinez and Dr. Schwartz, petitioner's treating psychiatrist and treating psychologist, respectively, at the state hospital. Ruiz-Martinez testified that petitioner "definitely doesn't have [a] mental illness," that he displayed no

---

[1] The statutes distinguish between "conditional release" from the state hospital and "discharge," in which the person is released without conditions. *See* ORS 161.341(4) (committed person may apply to board "for an order of discharge or conditional release"). As discussed later in this opinion, the board here determined that petitioner failed to prove his fitness for discharge and that, although petitioner would qualify for conditional release, the supervision and treatment necessary for conditional release were not available. However, given the board's conclusion that petitioner continued to be affected by a mental disease or defect and that he should not be discharged or conditionally released, the distinction between discharge and conditional release has no effect on the legal issue before us. Additionally, the term "discharge" sometimes is used in the statutes to mean discharge from commitment, *see, e.g.*, ORS 161.346(1)(a), and sometimes to mean discharge from the jurisdiction of the board, *see, e.g.*, ORS 161.351(3). That difference may be important in other circumstances, but it does not affect the analysis of this case.

signs or symptoms of paranoid thought disorder or schizophrenia, and that he was not being prescribed any medication for any mental disease or defect. Based on petitioner's medical history, she agreed with a diagnosis contained in petitioner's state hospital file that petitioner had a "marijuana dependency" and also suffered from alcohol abuse and methamphetamine abuse. She also agreed that "this kid belongs [in] prison, he doesn't have [a] mental illness, and * * * he [is] doing nothing here." Schwartz testified that petitioner was not suffering from a mental illness. Schwartz's written psychological evaluation found that petitioner had a substance dependency, but that it was in remission due to petitioner's inability to obtain alcohol or illegal drugs at the state hospital.

At the hearing, petitioner argued that he no longer was affected by a mental disease or defect because his only current diagnosis was marijuana dependency, which is a personality disorder that is excluded from the definition of mental disease or defect by ORS 161.295(2). The state argued that petitioner should not be discharged because he had failed to prove by a preponderance of the evidence that he no longer was affected by a mental disease or defect.

Following the hearing, the board issued an order denying petitioner's request for discharge and continuing his commitment. The board's findings of fact included the following:

> "[Petitioner] is affected by a mental disease or defect as demonstrated by the underlying facts shown by the evidence, including the expert testimony of Luvy Ruiz-Martinez, M.D., at the hearing, as well as the information contained in Exhibits 20, 18, 15, 14, 10, and 9.
>
> "* * * * *
>
> "[Petitioner] did not prove by a preponderance of the evidence his fitness for discharge as required by the standards of ORS 161.351."

The board's conclusions of law included the following:

> "[Petitioner], being affected by a mental disease or defect which, when active, renders him a substantial danger to others, is under the jurisdiction of the [board.]"

The board also found that petitioner was an appropriate subject for conditional release but that, because adequate treatment resources were not available in the community, he could not be released at that time. As a result, the board continued petitioner's commitment to the state hospital until such time as those resources might become available.

On judicial review in the Court of Appeals, petitioner argued that the board erred in finding that he had a "mental disease or defect" because the only expert testimony regarding petitioner's mental condition at the time of the release hearing—the testimony of Ruiz-Martinez and Schwartz—was to the effect that petitioner had no mental disease or defect, but that he suffered from substance dependency. Petitioner asserted that substance dependency is not a mental disease or defect but, rather, is a "personality disorder" that the legislature, in ORS 161.295(2), expressly excluded from the definition of mental disease or defect.

The board's response was twofold. First, the board argued that, regardless of whether substance dependency is a personality disorder or a mental disease or defect, petitioner had the burden of proving that he no longer was affected by a mental disease or defect. Accordingly, the board asserted that, as this court held in *Einstein v. PSRB*, 330 Or 121, 128, 998 P2d 1051 (2000), the only issue on review was whether a reasonable person, based on the evidence before the board, could infer that the petitioner presently suffers from a mental disease or defect. The board then argued that the record at the release hearing, including the 1999 evaluations by Cooley and Colistro that petitioner was affected by a mental disease or defect, provided substantial evidence to support the board's findings and conclusions. Second, the board disagreed with petitioner's legal argument regarding substance dependency. It argued that petitioner's diagnosis of substance dependency constituted a mental disease or defect and not a "personality disorder," as those terms are used in ORS 161.295. For that reason, the board claimed, it properly could base its determination that petitioner continued to be affected by a mental disease or defect on the testimony regarding his substance dependency.

The Court of Appeals affirmed the board's order, citing two cases, *Rios v. PSRB*, 176 Or App 252, 30 P3d 1227 (2001), *rev dismissed*, 335 Or 505 (2003); and *Hanson v. PSRB*, 156 Or App 198, 965 P2d 1051 (1998), *rev'd and rem'd on other grounds*, 331 Or 626, 19 P3d 350 (2001), in which that court had concluded that substance dependency constitutes a mental disease or defect.[2]

■ On review, the parties reiterate their arguments in the Court of Appeals. We first consider the board's argument that, regardless of whether substance dependency is a "mental disease or defect" or, instead, is a "personality disorder," substantial evidence in the record supported its order and we therefore should affirm. The board is correct that the record contains the 1999 evaluations that diagnosed petitioner as being affected by paranoid thought disorder and schizophrenia, as well as expert testimony at the hearing that he no longer was affected by those mental illnesses (if he ever was) or by any other mental disease or defect. Ordinarily, that record might, if accepted by the board, provide substantial evidence to support an inferential determination by the board that petitioner continued to be affected by the mental illnesses that had been diagnosed as recently as two years earlier.

Here, however, we are unable to determine whether the board's finding that petitioner is affected by a mental disease or defect was based on its inference, from petitioner's 1999 diagnoses, that petitioner continues to suffer from paranoid thought disorder and schizophrenia or, instead, on evidence that, although he no longer is affected by those mental illnesses, he is affected by the mental disease or defect of substance dependency. The board's order states that its finding that petitioner is affected by a mental disease or defect was based on the expert testimony of Ruiz-Martinez and several

---

[2] We note that, in a case decided after its decision in this case, the Court of Appeals overruled its decisions in *Rios* and *Hanson* and held that, under ORS 161.295, substance dependency is a personality disorder and not a mental disease or defect. *Beiswenger v. PSRB*, 192 Or App 38, 84 P3d 180, *rev dismissed*, 337 Or 669 (2004).

mental health evaluations that are part of the hearing record. Most of those evaluations, like Ruiz-Martinez's testimony, concluded that petitioner was affected by only substance dependency. However, the board's order also states that the board relied on Colistro's 1999 evaluation, which concluded that petitioner suffered from "schizophrenia, paranoid type," as well as "polysubstance dependency/abuse." Because, as we explain below, we conclude that substance dependency is a "personality disorder" and thus is not a "mental disease or defect" within the meaning of ORS 161.295(1), and because the board's order may have been based on a contrary and erroneous interpretation of that statute, we cannot affirm the board's order on the first ground it asserts. We would require further proceedings before the board, consistent with this opinion, and a new board order before we would have a record and order adequate to permit the substantial evidence review that the board urges.

We now turn to the parties' dispute as to whether petitioner's admitted substance dependency is a "personality disorder" that the legislature has excluded from the definition of "mental disease or defect." Petitioner argues that it is. The board disagrees and asserts that substance dependency qualifies as a mental disease or defect under ORS 161.295(1).[3] We therefore must interpret and apply the pertinent statutes, which we do according to the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with a review of the relevant statutes.

We first observe that, as noted previously, this case arises out of a board hearing under ORS 161.341(4) in which petitioner sought to prove that he was "no longer affected by mental disease or defect." We therefore must interpret the phrase "mental disease or defect" as it is used in that statute.

---

[3] The petitioner in *Menzl v. PSRB*, 325 Or 159, 934 P2d 431 (1997), also argued that substance abuse is not a mental disease or defect because it is solely a personality disorder under ORS 161.295(2). However, in reviewing the board's order, this court held that the board had erred for a different reason. The court therefore reversed the board's order without reaching the issue presented in this case. *Id.* at 165; *see also Hanson v. PSRB*, 331 Or 626, 19 P3d 350 (2001) (similarly vacating a board order without reaching issue of whether alcohol abuse constituted mental disease or defect).

When the trial court in 1999 found petitioner guilty except for insanity by reason of "mental disease or defect" and placed him under the jurisdiction of the board, however, it did so under ORS 161.295, ORS 161.319, and ORS 161.325. An initial interpretive question then is whether the phrase "mental disease or defect" has the same meaning under both sets of statutes—those that relate to trial court orders regarding judgments of "guilty except for insanity" and those that relate to board proceedings by persons seeking discharge. The parties appear to assume that the phrase "mental disease or defect" has the same meaning in both sets of statutes. An examination of the statutes supports that conclusion.

The procedures for determining when a person may be found not responsible for criminal conduct because of mental disease or defect and those for obtaining release from a state hospital by proving the absence of a mental disease or defect were part of the legislature's 1971 revision of the Criminal Code. Although those statutes have been amended a number of times, the structure of the 1971 revision continues in the present statutes. *See generally* Or Laws 1971, ch 743, §§ 36-53 (setting out standards for lack of responsibility for criminal conduct resulting from "mental disease or defect" and procedures for asserting defense, commitment to state hospital, and discharge from hospital). The 1971 law expressed, in a coherent sequence of specific provisions, the policy that a person is "not responsible" for criminal conduct if the person engages in criminal conduct but, because of a mental disease or defect, lacks the capacity to appreciate the criminality of the conduct or to conform the conduct to the requirements of law. *Id.* at § 36. The law then described the required notice of a defendant's intent to use that defense, the burden of proof, and other matters related to proceedings in a criminal trial in which the defendant raises that defense. *Id.* at §§ 38-42. The law next set out the findings that the trial court, following a determination that a person was not responsible for criminal conduct, was required to make respecting commitment to the state hospital, release under supervision, or discharge. *Id.* at §§ 43-47. Finally, the law established the procedures and standards under which a person who had been committed to the state hospital could seek

to be discharged by proving that he or she no longer was affected by a mental disease or defect. *Id.* at §§ 47(3), 49.

The legislature has amended the statutes relating to responsibility for criminal conduct several times, most notably in 1983, when it adopted the phrase "guilty except for insanity" in place of the 1971 law's statement that such a person was "not responsible" for otherwise criminal conduct. *See* Or Laws 1983, ch 800, § 1 (amending ORS 161.295 to substitute "guilty except for insanity" for "not responsible for criminal conduct at the time of such conduct").[4] As relevant here, however, neither the 1983 changes nor any other amendments to the law initially enacted in 1971 altered the basic structure of the provisions regarding "mental disease or defect" outlined above. The phrase "mental disease or defect" continues to denote a defense, under some circumstances, in a criminal proceeding, and the absence of a "mental disease or defect" continues to be a means by which a person who has been committed involuntarily to the state hospital may seek discharge. Although many other aspects of those statutes have changed since 1971, the parallel use of the phrase "mental disease or defect" has remained the same.

■■    When the legislature uses the identical phrase in related statutory provisions that were enacted as the part of the same law, we interpret the phrase to have the same meaning in both sections. *PGE*, 317 Or at 611 (stating principle). Neither party has offered any argument that the phrase "mental disease or defect" has any different meaning in ORS 161.341(4), the specific statute at issue here, than it does in ORS 161.295, the statute recognizing the guilty except for insanity defense, and we are aware of none. For those reasons, we conclude that the phrase "mental disease or defect" in ORS 161.341(4) has the same meaning as it does in ORS 161.295, and we proceed to consider that meaning by looking at the more detailed context offered by ORS 161.295, including the legislature's decision to specifically exclude "personality disorders" from that definition.

ORS 161.295 provides, in part:

---

[4] As we discuss in detail below, the 1983 law also added the "personality disorder" exclusion to the definition of "mental disease or defect." *See* Or Laws 1983, ch 800, § 1 (amending ORS 161.295).

"(1)   A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2)   * * * [T]he terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

As this court has observed, the legislature has not provided a definition of the term "mental disease or defect," other than to state that it does not include a "personality disorder." *See Hanson v. PSRB*, 331 Or 626, 630, 19 P3d 350 (2001) (so stating). Moreover, the terms "mental disease or defect" and "personality disorder," although they consist of common individual words, are not terms "of common usage" that we must interpret according to their "plain, natural, and ordinary meaning" at the initial level of our *PGE* analysis, and it would be futile to treat them as such. Rather, those phrases are terms of art that are used in the context of professional disciplines such as psychiatry and psychology, although here, of course, their application has specific legal consequences. *See Mueller v. PSRB*, 325 Or 332, 339, 937 P2d 1028 (1997) ("personality disorder" is term of art).

The board asserts that this court resolved the meaning and application of ORS 161.295 in *Mueller*. According to the board, this court in *Mueller* ascertained that the legislature intended the phrase "personality disorder," for all purposes, to have the meaning set out in the third edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-III), published in 1980.[5] The board, however, exaggerates the significance of *Mueller*. *Mueller* answered the narrow question whether an "organic personality syndrome"—more properly labeled, as this court noted in *Mueller*, an "organic personality disorder"—was (1) a mental disease or

---

[5] The DSM-III is a reference work compiled by the American Psychiatric Association that categorizes mental disorders. The DSM-III uses five axes for classifying disorders. The first two axes are for mental disorders, and the third is for physical disorders and conditions. The fourth and fifth axes provide information supplementing the official diagnoses under the first three axes. In 1987, the DSM was revised (DSM-III-R), and in 1994, it was superseded by DSM-IV.

defect; or (2) a personality disorder as described in ORS 161.295(2) and OAR 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(4). Relying on the DSM-III, the court concluded that organic personality syndrome was a mental disease or defect rather than a personality disorder. 325 Or at 340-42.

The analysis in *Mueller* does not answer the question of what the legislature intended to include within the term "personality disorder" when it enacted ORS 161.295(2). As noted, this court in *Mueller* observed that the DSM-III offered guidance in evaluating the meaning of "personality disorder," which it described as a term of art. *Id.* at 339. The court, however, did not conclude that the legislature intended the DSM-III to control the meaning of "personality disorder" in ORS 161.295 and did not investigate the legislative history of ORS 161.295. Instead, the court shifted its focus to *former* OAR 859-10-005(5) and (6) (now OAR 859-010-0005(4) and (5)), which defined "mental disease" and "mental defect" by referencing the DSM-III. The court accepted that rule's specific incorporation of the DSM-III definitions as dispositive of the legal question before the court. The court concluded, "OAR 859-10-005(5) and (6) (1987) incorporated the DSM-III by reference to define mental disease and mental defect. The board's rules thus contemplate that the DSM-III is the appropriate reference. We turn, then, to that document." 325 Or at 340 (citation omitted). In sum, *Mueller* never inquired into the legislature's intent in adopting ORS 161.295, and it relied on a rule that specifically referenced the DSM-III rather than relying on the statute. Thus, although *Mueller* properly identified the DSM-III as an important source for interpreting statutory terms related to mental illness, nothing in that case suggests that the term "personality disorder" is to be defined as it is in the DSM-III. Nor does the case suggest which part of DSM-III controls when different interpretations of that source are plausible.

As noted, the legislature has not defined the terms "mental disease" and "mental defect." The legislature has, however, provided some guidance as to the meaning of those terms. The 1971 Criminal Code revision excluded from those terms "an abnormality manifested only by repeated criminal or otherwise antisocial conduct," Or Laws 1971, ch 743,

§ 36(2), and the 1983 amendment excluded "any abnormality constituting solely a personality disorder." Or Laws 1983, ch 800, § 1. This much is clear: whatever "mental disease or defect" means, it does not include an abnormality that constitutes solely a "personality disorder."

Although our precedents do not require us to rely on the DSM, the parties both begin their arguments concerning the meaning of "personality disorder" with the definition of that term in the DSM-III. According to that definition, "personality disorder" refers to a condition that typically manifests itself no later than adolescence, continues throughout most of a person's adult life, and involves "enduring patterns of perceiving, relating to, and thinking about the environment and onself" that "are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress." DSM-III at 305. Petitioner argues that the legislature intended the term "personality disorder" to include substance dependency and, therefore, that substance dependency is excluded from the definition of "mental disease or defect." The board responds that, in the DSM-III, substance disorders, including drug and alcohol dependence, are not included in the section on personality disorders, but are separately coded in Axis I, which deals with clinical disorders.

Both petitioner's and the board's interpretations of "personality disorder" are plausible interpretations of that term as used in ORS 161.295(2). Looking only to the statutory text, it is possible to conclude, as does petitioner, that the legislature deemed substance dependency to be the kind of "enduring pattern" of relating to one's environment that is "inflexible and maladaptive" and causes impairment in functioning, and, therefore, is a "personality disorder" and not a "mental disease or defect." Alternatively, the board's view that "personality disorder" does not include substance dependence because the DSM-III deals with clinical disorders, such as alcohol and drug dependency, in a different section than its discussion of personality disorders, also is plausible. Because both of those proposed interpretations of the statutory text are plausible, we conclude that the term "personality disorder," as used in ORS 161.295(2), is ambiguous,

and we turn to legislative history to determine which among the competing interpretations the legislature intended. *See Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994).

In a case that the Court of Appeals decided after its decision in this case, that court, in an opinion by Judge Landau, engaged in a detailed review of the legislative history leading to the legislature's decision to exclude personality disorders from the definition of mental disease or defect in ORS 161.295. *See Beiswenger v. PSRB*, 192 Or App 38, 48-51, 84 P3d 180 (2004), *rev dismissed*, 337 Or 669 (2004). We find the court's discussion of that legislative history pertinent here and therefore set it out at length:

> "ORS 161.295 originated as House Bill (HB) 2075 during the 1983 legislative session. The bill was the product of an interim legislative committee that focused on public concerns with the so-called 'insanity defense' in criminal cases. At the first of the many hearings on the bill, the witnesses who testified in support urged that the determinative term 'mental disease or defect'—*not* be defined solely in psychiatric terms, but rather in legal or multidisciplinary terms. The Executive Director of [the board], for example, testified that the American Psychiatric Association had released a report on the 'insanity defense' in which it recommended that the 'decision to release' a person under such a scheme 'not be made solely by psychiatrists or solely on the basis of psychiatric testimony regarding the person's mental condition.' Minutes, House Committee on Judiciary, HB 2075, Apr 6, 1983, 2 (statement of Felicia Gniewosz). Similarly, a professor of psychiatry at Oregon Health Sciences University (OHSU) submitted written testimony stating that he 'view[ed] the insanity defense as a legal issue. Psychiatrists and physicians did not invent the insanity defense. It came from the law and serves legal ends.' Minutes, House Committee on Judiciary, HB 2075, Apr 27, 1983, Ex E (statement of Professor Joseph D. Bloom, M.D.).

> "The original version of the bill did not exclude 'personality disorders' from the 'mental disease[s] or defect[s]' that would be subject to a defense of guilty except for insanity. At an early hearing on the bill, the Executive Director of [the board] suggested that the bill should address that issue:

" 'The legislature should take a position to either include or exclude "personality disorders" from the definition [of "mental disease or defect"]. It should be noted that personality disorders include the following diagnoses: antisocial, inadequate, passive-aggressive, sexual conduct disorders, drug dependent, alcohol dependent and paranoid.'

"Minutes, House Committee on Judiciary, HB 2075, Apr 27, 1983, Ex D (statement of Felicia Gniewosz).

"At the same hearing, the chair of [the board] testified that the board supported the exclusion of 'personality disorders' from the definition of 'mental disease or defect.' She explained to the House Judiciary Committee that 'personality disorders' include child molestation, other sex offenses, and persons 'suffering from a drug-induced syndrome.' Tape Recording, House Committee on Judiciary, HB 2075, Apr 27, 1983, Tape 270, Side A (statement of Judy Snyder). She added as a further example of a 'personality disorder':

" '[P]eople who have an alcohol problem and who maybe stabbed someone while they were in an alcoholic stupor and they're put under our jurisdiction. * * * The problem the board has is that kind of person can be very dangerous if they drink alcohol but the doctors will testify that's not a mental illness, they don't have a mental illness[.]'

"*Id.* at Tape 269, Side B.

"The subject of defining the conditions that constitute a 'personality disorder' arose again at a later hearing. During the course of further testimony from the Executive Director of [the board], Representative Hill asked whether the distinguishing characteristic of a 'personality disorder' is the individual's self control. The Executive Director replied that some individuals can control their disorders, while others cannot. She explained that 'the perfect example would be that one of the personality disorders would be somebody that's alcohol or drug dependent.' Tape Recording, House Committee on Judiciary, HB 2075, May 13, 1983, Tape 324, Side A (statement of Felicia Gniewosz).

"It was at that point that the current wording of the statute was first proposed. Representative Courtney asked Jeffrey Rogers, the chair of the legislative interim task force

that had drafted the bill, to propose wording that would accomplish the exclusion of 'personality disorders' from the statutory definition of 'mental disease or defect.' Rogers responded with the wording that is, in substance, the current law. The wording was adopted by the House Judiciary Committee without objection. Tape Recording, House Committee on Judiciary, HB 2075, May 13, 1983, Tape 324, Side A.

"The House Judiciary Committee ultimately approved the bill, including the exclusion for 'personality disorders.' Interestingly, in the staff measure analysis prepared for the benefit of the committee members, the effect of the bill was summarized in the following terms:

> " 'The bill as amended further limits the scope of mental diseases or defects for which a person may be found, under present law, "not responsible." Existing law excludes abnormalities manifested only by repeated criminal or otherwise antisocial conduct. The bill would exclude, in addition, any abnormality which constitutes solely a personality disorder, which includes such diagnoses as sexual conduct disorders, drug dependent and alcohol dependent.'

"Staff Measure Analysis, House Committee on Judiciary, HB 2075 (1983).

"The bill moved to the floor of the House, where the floor manager, Representative Courtney, explained that it contained a 'personality exclusion' that accomplished a narrowing of the definition of 'mental disease or defect.' Quoting from a letter from [the board's] Executive Director to the House Judiciary Committee, he explained:

> " 'Right now if a person has what is considered a personality disorder, by that I mean what they call "antisocial, inadequate, passive-aggressive, sexual conduct disorders, drug dependent, alcohol dependent, or paranoid," if they fit into that personality disorder category they're able to claim that they have a mental disease or defect. We now no longer, with this piece of legislation, will allow an individual to say that I have a mental disease or defect because I have a personality disorder.'

"House Floor Debate, HB 2075, June 16, 1983, Reel 19, Track I (Rep Peter Courtney).

"After passage by the House, the bill [proceeded to the Senate, where it] was referred to the Senate Judiciary Committee. At the first hearing on the bill, Representative Courtney introduced it to the committee and explained that it 'would remove personality disorders as a category that could be relied on for use of the insanity plea.' Tape Recording, Senate Committee on Judiciary, HB 2075, June 29, 1983, Tape 234, Side A (Rep Peter Courtney). A 'personality disorder,' he explained, included such conditions as 'antisocial, inadequate, passive-aggressive, sexual conduct disorders, drug dependent, alcohol dependent, paranoid, etc.' *Id.*

"Rogers also testified before the Senate Judiciary Committee. He explained the findings of a recently completed study that he and two professors from OHSU had completed concerning the insanity defense in Oregon. The report explicitly categorized alcohol and drug dependency as 'personality disorders.' Senate Judiciary Committee, HB 2075, June 29, 1983, Unmarked Exhibit ('Oregon's New Insanity Defense System: A Review of the First Five Years—1978-1982').

"The Senate Judiciary Committee, concerned that the concept of 'personality disorder' was too difficult to define, deleted the exclusion from the bill, and the Senate approved the bill as amended.

"The bill then moved to a conference committee. The first topic of discussion was the deletion of the 'personality disorder' exclusion. Representative Courtney explained that he was satisfied that the term was practicable. He referred to the Rogers insanity defense study and its list of diagnoses—including, among other things, drug and alcohol dependency—that qualified as 'personality disorders.' Tape Recording, Conference Committee, HB 2075, July 13, 1983, Tape 550, Side A. The committee ultimately agreed to restore the 'personality disorder' exclusion. The staff measure analysis of the final version of the bill explained that, as amended, the bill 'would exclude * * * any abnormality which constitutes solely a personality disorder, which includes such diagnoses as sexual conduct disorders, drug dependent and alcohol dependent.' Staff Measure Analysis, House Committee, HB 2075, 1983. As amended by the conference committee, the bill was passed by both houses and signed into law."

192 Or App at 48-51 (alterations added; omissions and emphasis in original).

Having considered the legislative history, we now are satisfied that we can discern the legislature's intent. The legislative history shows that the legislature intended to exclude personality disorders such as drug and alcohol dependency from the terms "mental disease" and "mental defect" as it used those terms in ORS 161.295.

Despite the foregoing evidence of legislative intent, the board insists that "[t]he legislative history does not clearly express the legislative intent." The board observes that several witnesses testifying before the legislature proposed an explicit adoption of the DSM and its standards in ORS 161.295. The legislature, however, chose not to do that, as ORS 161.295 itself demonstrates. *Cf. Mueller*, 325 Or at 339-40 (board's rules, but not ORS 161.295, incorporate DSM standards). The board concedes that its argument is a weak one, however, in light of the specific references in the legislative record that drug or alcohol dependency would not be considered a mental disease or defect and thus a basis for an insanity defense, and we find the argument unpersuasive for that reason. The legislative history satisfies us that the legislature did not intend to incorporate substance dependency into the definition of "mental disease or defect" in ORS 161.295. That established, we need not explore the question of legislative intent further. *See PGE*, 317 Or at 612 (where legislative history clarifies legislative intent, court does not inquire further). We hold that substance dependency is a "personality disorder" as that term is used in ORS 161.295(2).

As we explained above, we cannot determine from the board's order in this case whether it based its conclusion that petitioner continues to suffer from a mental disease or defect on a finding that petitioner was affected by substance dependency only or, instead, on a finding that petitioner was affected, either solely or in part, by a mental disease or defect. A decision based solely on the former ground would be legally incorrect, for the reasons stated above, while a decision based on the latter ground would be legally correct if it were supported by substantial evidence in the record. The board on

remand must clarify which ground it finds to be the correct one here and, having done so, issue an order accordingly.

The decision of the Court of Appeals is reversed. The order of the Psychiatric Security Review Board is vacated, and the case is remanded to the board for further proceedings.