In the Matter of C. R. C.,
a Minor Child.

STATE ex rel DEPARTMENT
OF HUMAN SERVICES,
*Respondent,*

*v.*

W. C.,
*Appellant.*

Linn County Circuit Court
J040610; Petition Number 04266J
A134354

172 P3d 264

Alexandra West argued the cause for appellant. On the brief were Mark Johnson and Johnson Renshaw & Lechman-Su PC.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Schuman and Rosenblum, Judges.

ROSENBLUM, J.

.

**ROSENBLUM, J.**

This case involves a challenge by the Department of Human Services (DHS) to a voluntary acknowledgment of paternity affidavit (acknowledgment) naming appellant as the biological father of the child, C. R. C. The juvenile court concluded that the biological mother (mother) lacked authority to sign the acknowledgment because her parental rights had been terminated at the time of the signing. Accordingly, the court ordered that the acknowledgment was invalid and that appellant was not the legal father of the child. Appellant appeals that order, ORS 419A.200(1). We review the record *de novo*, ORS 419A.200(6)(b), and the court's legal conclusions for errors of law, *see State ex rel SOSCF v. Dennis*, 173 Or App 604, 606, 25 P3d 341, *rev den*, 332 Or 558 (2001). We reverse.

To provide context for our discussion of the facts and the parties' assertions, we begin with a brief description of the statutes governing the establishment of paternity. ORS 109.070[1] grants a disputable presumption of paternity for children born of married parents and provides that paternity may otherwise be resolved by various methods, including by voluntary acknowledgment.[2] In that respect, ORS 109.070(1)(d) provides that paternity may be established

"[b]y filing with the State Registrar of the Center for Health Statistics the voluntary acknowledgment of paternity form as provided for by ORS 432.287. Except as otherwise provided in subsections (2) to (4) of this section [discussed below], this filing establishes paternity for all purposes."

ORS 432.287(1), in turn, directs DHS to adopt an acknowledgment form:

---

[1] All references to ORS 109.070 in this opinion are to the 2005 version of the statute. We note that the 2007 Legislative Assembly amended ORS 109.070 to provide, *inter alia*, that a voluntary acknowledgment of paternity signed by a person whose parental rights have been terminated is not valid. Or Laws 2007, ch 454, § 1. Those amendments take effect January 1, 2008, and therefore are not pertinent to our analysis.

[2] Paternity may also be resolved by marriage of the parents after the birth of the child, ORS 109.070(1)(b), by filiation proceedings, ORS 109.070(1)(c), by having established paternity through a voluntary acknowledgment of paternity process in another state, ORS 109.070(1)(e), and by other provisions of law, ORS 109.070(1)(f).

"The Director of Human Services shall adopt by rule a form of a voluntary acknowledgment of paternity that includes the minimum requirements specified by the United States Secretary of Health and Human Services. When the form is signed by both biological parents and witnessed by a third party, the form establishes paternity for all purposes when filed with the State Registrar of the Center for Health Statistics, provided there is no male parent already named on the birth certificate. Establishment of paternity under this section is subject to the provisions and the requirements in ORS 109.070. When there is no other male named as father on the child's birth certificate, the filing of such voluntary acknowledgment of paternity form shall cause the state registrar to place the name of the male parent who has signed the voluntary acknowledgment of paternity form on the birth certificate of the child or, if appropriate, issue a new birth certificate containing the name of the child's male parent, as that parent is named in the voluntary acknowledgment of paternity form. * * * In all other circumstances [other than when the form is signed in a health care facility within five days after the child's birth], the form is a sworn document. The filing of the voluntary acknowledgment of paternity form created by this section is subject to the payment of any fees that may apply."

Among other things, the form must contain a statement of rights and responsibilities and a statement of the alternatives to and consequences of signing the form. ORS 432.287(2).

The circumstances under which a voluntary acknowledgment of paternity may be rescinded or challenged are set forth in ORS 109.070(2) to (4). Subsection (3) is relevant to this case:

"(3)(a)   A signed voluntary acknowledgment of paternity filed in this state may be challenged in circuit court:

"(A)   After the 60-day period in a proceeding under section 9, chapter 160, Oregon Laws 2005 [allowing the mother or legal father to petition the court to reopen the issue of paternity under certain circumstances].

"(B)    At any time after the 60-day period on the basis of fraud, duress or a material mistake of fact by:

"(i)    A party to the acknowledgment;

"(ii)   The child named in the acknowledgment; or

"(iii) *The Department of Human Services or the administrator, as defined in ORS 25.010, if the child named in the acknowledgment is in the care and custody of the department under ORS chapter 419B and the department or the administrator reasonably believes that the acknowledgment was obtained through fraud, duress or a material mistake of fact.*

"* * * * *

"(c)    The party challenging an acknowledgment under this subsection has the burden of proof."[3]

(Emphasis added.)

With that background in mind, we turn to the facts of this case. The child was born on November 7, 2004, and was taken into protective custody by DHS two days later.[4] Mother, who was unmarried, gave the child appellant's surname on the birth certificate.[5] She also completed a DHS questionnaire, on which she stated her belief that appellant was the biological father of the child. Appellant visited mother and the child in the hospital, gave mother some money, and then left. He last saw the child two days after her birth.

On February 11, 2005, DHS sent a letter to appellant, informing him that he had been named by mother as the biological father of the child, but that he needed to establish legal paternity before DHS could include him in planning on

---

[3] If the court determines under subsection (3) that the male party is not the father of the child, a party to the challenge may then apply to the court for a judgment of nonpaternity. ORS 109.070(4)(b).

[4] The child was adjudged to be within the jurisdiction of the juvenile court on January 7, 2005.

[5] Appellant was not identified on the birth certificate as the father of the child. *See* ORS 432.206(7) (prohibiting the name of the father from being entered on the birth certificate if the mother was not married at the time of either conception or birth, or between conception and birth, unless a voluntary acknowledgment of paternity form signed by both parents is filed with the state registrar).

behalf of the child. That letter was returned unclaimed. On February 22, DHS sent a second letter to appellant in care of the Lane County Jail. Appellant responded by fax on March 21. He stated that he was currently incarcerated, but expected to go through drug and alcohol treatment and did not wish to give up his parental rights to the child. DHS replied by letter addressed to appellant at the Coffee Creek correctional facility in Wilsonville. That letter informed appellant that, unless he established legal paternity, he had no parental rights; it also suggested that he consult with an attorney or contact DHS's Division of Child Support to establish paternity. DHS did not hear anything further from appellant until December 7, 2005, at which time appellant called DHS and again expressed interest in establishing legal paternity.

Meanwhile, on June 17, 2005, a judgment terminating mother's parental rights was entered in Linn County Circuit Court, and the child was permanently committed to the custody of DHS for the purpose of adoption. On September 3, 2005, DHS placed the child in the physical custody of the prospective adoptive parents.

In June 2006, a year after mother's parental rights had been terminated, mother and appellant signed a voluntary acknowledgment of paternity affidavit on a form prescribed by DHS under ORS 432.287.[6] The acknowledgment identified mother as the biological mother of the child and appellant as the biological father. By her signature on the affidavit, mother acknowledged, in part:

> "I am the biological mother of the child; the above information is true; I was not married to anyone at the time of the child's conception, birth or anytime in between; I am signing this affidavit for the purpose of establishing paternity of the child[.]"

---

[6] Lynch, the mother of appellant's then 11-year-old son (and, therefore, the child's half-brother), coordinated this effort. Specifically, she arranged to get the notarized signatures of both mother and father and sent the completed acknowledgment and required fee to the Center for Health Statistics for a new birth certificate for the child. She also moved for "limited participation rights" in the proceeding that gave rise to this appeal, indicating her desire to adopt the child. The juvenile court's ruling on that motion is not part of this appeal.

Appellant's signature acknowledged, in part:

> "I am the biological father of the child; the above information is true; I am signing this affidavit for the purpose of establishing paternity of the child[.]"

The reverse side of the form contained a "Statement of Rights and Responsibilities." It explained that the acknowledgment "establishes the man who has signed it as the legal father of the child, if the mother was not married to another man at the time of the child's conception, birth or anytime in between," and sets forth the rights and responsibilities attendant on that designation. It also provides, "Do not sign this acknowledgment if: * * * [y]ou are NOT the biological parent of the child[.]" (Uppercase in original.)

The Center for Health Statistics (CHS), the office responsible for maintaining vital records in Oregon, received the signed and notarized acknowledgment on July 10, 2006. On the same day, CHS issued an amended birth certificate for the child, adding appellant as the father of the child.[7]

Thereafter, DHS filed a motion in Linn County Juvenile Court for an order "(1) vacating the amended birth certificate of [the child], (2) finding the voluntary acknowledgment of paternity is invalid, and (3) concluding that [appellant] is not the legal father of [the child]." Citing ORS 419B.524, DHS argued that mother was not legally entitled to sign the acknowledgment because her parental rights to the child had been terminated. DHS also challenged the validity of the acknowledgment under ORS 109.070(3), asserting that "it may have been fraud or a mistake of fact for [mother] to act as if she had the requisite authority to sign the acknowledgment" after her rights had been terminated and that CHS's issuance of the amended birth certificate "may have been based upon fraud or material mistake of fact" because CHS did not know at that time that mother's parental rights had been terminated.[8] DHS's motion was

---

[7] By that time, a petition for adoption of the child had been filed in Douglas County Circuit Court by the family with whom the child had been placed. That petition is pending.

[8] DHS also argued below that appellant was time barred from asserting his parental rights because he waited until the child was released for adoption before attempting to establish paternity. DHS does not advance that argument on appeal.

accompanied by affidavits attesting to the facts described above, as well as an affidavit from a representative of CHS stating that, if CHS had received information that mother's parental rights had been terminated, it would have "flagged" the file and contacted the Department of Justice for advice before issuing the new birth certificate for the child.

At the hearing on the motion, appellant argued that DHS failed to present any evidence that the acknowledgment was the product of fraud, duress, or material mistake of fact, the only bases on which DHS is authorized to challenge the validity of the acknowledgment under ORS 109.070. In response to DHS's position that mother lacked legal authority to sign the acknowledgment, appellant also argued that the termination of mother's parental rights had no effect on the validity of the acknowledgment, because signing the form was not the assertion of a parental right but, rather, simply a statement of the "reality" that appellant was the biological parent.

In ruling on the motion, the court did not address DHS's authority to challenge the acknowledgment under ORS 109.070(3); instead, it determined that the "first issue is whether or not Mother had any legal authority to sign [the] document." The court held:

> "My ruling is that when the parental rights were terminated that terminated all of the rights that Mother had, including the right to sign a voluntary acknowledgment of paternity. A parent has various rights. They come as a bundle. [ORS 419B.524] reads, 'The order permanently terminates all rights of the parent or parents whose rights are terminated.' 'All' is very inclusive, all rights to sign a document, all rights to claim that this is now even your biological child. I think 'all' is very inclusive."

By written order, the court then ruled that the voluntary acknowledgment was invalid and that appellant is not the legal father of the child.

On appeal, appellant first asserts that DHS lacked standing under ORS 109.070(3) to challenge the acknowledgment, because it failed to present evidence suggesting a reasonable belief that it was acquired through fraud, duress,

or material mistake of fact.[9] DHS responds that standing is conferred under both ORS 109.070(3) and ORS 419B.376.

■       Standing refers to "whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). As noted, DHS identifies two potential sources of "standing": ORS 109.070(3) and ORS 419B.376. We begin with ORS 109.070, quoted above. *See* 216 Or App at 140-41. Subsection (3) of that statute expressly authorizes DHS to raise a circuit court challenge to a voluntary acknowledgment of paternity. That authority, however, is qualified: a child must be in DHS's care and custody pursuant to the dependency statutes, and DHS must "reasonably believe[ ] that the acknowledgment was obtained through fraud, duress or a material mistake of fact." ORS 109.070(3)(a)(B)(iii). There is no dispute that the child was in DHS custody; the issue here centers on the latter requirement.

DHS argues that its motion and affidavits below establish its reasonable belief that the acknowledgment was the product of fraud or a material mistake of fact.[10] We disagree. According to DHS, mother's act of signing the acknowledgment after her parental rights had been terminated constituted either fraud or material mistake of fact—in other words, mother either "misrepresented" herself as having the legal right to sign when she did not, or she signed under the "mistaken notion" that she could properly execute the form. As it did below, DHS relies on ORS 419B.524, which provides:

> "Unless there is an appeal from the order terminating the rights of the parent or parents, the order permanently terminates all rights of the parent or parents whose rights

---

[9] Although appellant styles his first argument as a challenge to the court's "subject-matter" jurisdiction to entertain the motion, his argument is framed solely in terms of DHS's "standing" to bring the action under ORS 109.070(3), and we treat it accordingly. In light of our disposition of this argument, we need not discuss appellant's challenge, on the merits, to the court's ruling.

[10] DHS conceded below that there was no indication of duress.

are terminated and the parent or parents have no standing to appear as such in any legal proceeding concerning the ward."

■     The fundamental flaw in DHS's argument is that, even if DHS is correct that mother lacked the legal capacity to sign the acknowledgment once her parental rights had been terminated—a question we expressly do not decide—DHS fails to explain how mother's action in doing so constituted fraud or a material mistake of fact. ORS 109.070(3)(a)(B)(iii). With respect to fraud, DHS makes no attempt to develop its theory beyond simply reciting the elements. We reject that undeveloped discussion except to note that, even if mother's act in signing the acknowledgment could be understood—as DHS apparently would have us do—as a misrepresentation of fact that she was legally entitled to do so, there is nothing in the record to indicate that mother knew that this representation was false or that she intended to deceive appellant. *See generally Pollock v. D. R. Horton, Inc.*, 190 Or App 1, 20, 77 P3d 1120 (2003) ("Under Oregon law, proof of fraud generally requires a showing that (1) the accused had falsely represented a material fact; (2) the accused knew that the representation was false; (3) the misrepresentation was made with the intent to induce the recipient to act or refrain from acting; (4) the recipient justifiably relied on the misrepresentation; and (5) the recipient was damaged by that reliance." (Internal quotation marks omitted.)).

■     In a similar vein, we also disagree with DHS that the acknowledgment was obtained through a material "mistake of fact." The term "mistake of fact" is a legal term of art and has a well-established meaning. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (first step of inquiry into legislative intent of statute involves examining statute's text and context); *Tharp v. PSRB*, 338 Or 413, 423, 110 P3d 103 (2005) (terms of art are given their acquired, specialized meaning). A "mistake of fact" refers to "[a] mistake about a fact that is material to a transaction: any mistake *other than* a mistake of law." *Black's Law Dictionary* 1023 (8th ed 2004) (emphasis added). A "mistake of law" is "a mistake about the legal effect of a known fact or situation."

*Id.* Hence, a mistake of fact is any mistake other than a mistake about the legal consequences of some known fact or situation.

Here, by signing the form, mother acknowledged the "known fact" that she is the biological mother of the child; that she was not married at the time of the child's conception, birth, or anytime in between; and that appellant is the biological father of the child. DHS does not assert—nor is there anything in the record to indicate—that mother was mistaken as to any of those facts.[11] Rather, as we understand it, DHS's challenge is to the ability of mother to sign the document (and thereby affect the legal status of the child) *in spite of* those facts. Put another way, mother was mistaken as to the legal consequences of the termination judgment and thus, in DHS's view, was precluded from signing at all. However, even if mother erroneously believed that she could sign the form when she was legally precluded from doing so, that error cannot be characterized as a *mistake of fact.*[12] *Cf. Dennis,* 173 Or App at 612-13 (no mistake of fact existed at the time the father stipulated to the termination of his parental rights based on the understanding that the child would be adopted by the putative adoptive parents even though those parents eventually were unable to adopt the child). If anything, mother's mistake was a mistake of law. *See generally Woods and Woods,* 207 Or App 452, 462, 142 P3d 1072 (2006) (parties' agreement to waive trial *de novo* premised on the mutually erroneous understanding that a judgment predicated on an arbitration award could be appealed to the Court of Appeals was a mistake of law). In sum, DHS presented no

---

[11] DHS argues in its brief that it "did not concede" below that appellant was in fact the child's biological father; however, it also did not assert its belief, nor present any evidence, that there was a mistake as to that fact and that the acknowledgment was erroneously "obtained" as a result. It was DHS's obligation to do so. ORS 109.070(3)(c).

[12] DHS alludes, in a summary fashion, to two other "mistakes of fact": (1) CHS's mistake concerning the relationship of Lynch to the child; and (2) CHS's mistake in issuing an amended birth certificate after mother's rights had been terminated. Neither is of help to DHS; even assuming that either or both are mistakes of fact, the relevant mistake must relate to the acquisition of the voluntary acknowledgment of paternity, not the issuance of the birth certificate. ORS 109.070(3)(a)(B)(iii) (DHS may challenge a voluntary acknowledgment of paternity on reasonable belief "that the acknowledgment was obtained" through fraud, duress, or material mistake of fact).

evidence to support a reasonable belief that the voluntary acknowledgment of paternity was obtained through fraud or a material mistake of fact. As a result, we conclude that DHS lacked standing under ORS 109.070(3)(a)(B)(iii) to bring a legal challenge to the validity of the acknowledgment.

■■ DHS also identifies ORS 419B.376 as a source of standing for it to bring the present action. That statute provides, in part:

> "A person, agency or institution having guardianship of a ward by reason of appointment by the court has the duties and authority of a guardian of the ward, including but not limited to the following:
>
> "* * * * *
>
> "(4) When the ward has been committed under ORS 419B.527, to consent to the adoption of the ward.
>
> "(5) To make other decisions concerning the ward of substantial legal significance."

Again, we fail to appreciate how this statute independently confers standing on DHS to challenge the *voluntary acknowledgment of paternity,*[13] and DHS does not elaborate. There is nothing in ORS 419B.376 that can be read as granting such authority. ORS 109.070(3), on the other hand, unambiguously states who may challenge an acknowledgment in circuit court and under what circumstances.

Finally, DHS argues that

> "[r]egardless of whether mother's act of signing the acknowledgment to establish appellant's paternity can be characterized as fraud or material mistake of fact for purposes of ORS 109.070(3), ORS 419B.524 provides an independent basis for holding that mother's signature on the voluntary

---

[13] Although the order DHS sought encompassed more than a declaration as to the validity of the acknowledgment, the other relief requested—namely, that the court vacate the child's birth certificate and conclude that appellant is not the child's father—was dependent on a determination that the acknowledgment was invalid, and DHS does not argue otherwise. *See Eckles v. State of Oregon,* 306 Or 380, 384, 760 P2d 846 (1988) ("[W]hether a person *is entitled to seek judicial relief* depends upon the type of relief sought and commonly is governed by a specific statutory standard. * * * A person with standing to seek one type of relief will not necessarily have standing to seek any other type of relief.").

acknowledgment of paternity was rendered ineffective by ORS 419B.524."

Again, even if that were the case, it does nothing to resolve the question before us—that is, whether the legislature has authorized *DHS* to raise that issue in circuit court. For all of the foregoing reasons, we conclude that the answer to that question is no.

Reversed.